**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| JAIME A. RIVERA,<br><br>Petitioner,<br><br>v.<br><br>JEFF NINES, *Warden*, and<br>MARYLAND ATTORNEY GENERAL,<br><br>Respondents. | Civil Action No. 23-0986-TDC |

**MEMORANDUM OPINION**

Self-represented Petitioner Jaime A. Rivera, who is currently confined at the North Branch Correctional Institution in Cumberland, Maryland ("NBCI"), has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he collaterally attacks his 2017 convictions and sentence in the Circuit Court for Charles County, Maryland on charges of first-degree rape, second-degree rape, and sexual abuse of a minor. The Petition is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DISMISSED and DENIED.

**BACKGROUND**

**I. Convictions and Sentence**

On January 25, 2017, a jury in the Circuit Court for Charles County ("the Circuit Court") found Rivera guilty of first-degree rape, two counts of second-degree rape, and sexual abuse of a minor. The evidence at trial showed that on June 10, 2016, officers from the Charles County Sheriff's Office ("CCSO") received a report of a rape of child. Specifically, Detective Kristen

Gross of the CCSO Special Victims Unit reported to the University of Maryland Charles Regional Medical Center in La Plata, Maryland and interviewed an 11-year-old girl, M.A.C., who stated that she had been sexually assaulted at her home on June 5, during the previous weekend. M.A.C. described the clothing she was wearing during the assault, which included gray underwear.

At that time, M.A.C. resided in a two-bedroom residence on Crain Highway in La Plata with her mother, Maria Ivez Chavez; her stepfather, Jaime Rivera; and their two children J.R. and G.R. Chavez's three other children, who were M.A.C.'s siblings, also lived there. Chavez, Rivera, J.R., and G.R. slept in one bedroom, while M.A.C. and her siblings, Y.A.C., L.A.C., and E.A.C., slept in the other bedroom.

At trial, M.A.C. testified that on June 10, 2016, she went to the hospital directly from school because of "suicidal thoughts and rape." 1/24/17 Trial Tr. at 29, ECF No. 8-3. While there, M.A.C. reported that on a day that was not a school day, around 2:00 a.m., Rivera woke her up and demanded that she have sex with him. M.A.C. testified that when she said "no," her stepfather threatened her with a gray knife from the kitchen. *Id.* at 36. Later, Rivera woke up M.A.C. a second time and again demanded sex. M.A.C. again said "no." *Id.* at 46. This time, however, when Rivera said that he was going to get the knife again and told her to take off her clothes, she complied. M.A.C. testified that Rivera told her to open her legs, he got on top of her, he touched her breasts and her vagina, and he put his penis inside her vagina. M.A.C. was scared and crying during this encounter. Afterwards, Rivera told M.A.C. not to tell anyone. M.A.C testified that she went to the bathroom and found "white stuff" on herself and on her underwear. *Id.* at 53.

M.A.C. testified that she told her friends at school what had happened, then went to the hospital, where her blood was drawn and pictures were taken of her face and her vagina. M.A.C. also described that "big Q-Tip's" were used around her vagina. *Id.* at 56–57.

Y.A.C., M.A.C.'s younger sister who usually slept in the bottom bunk bed below M.A.C., testified at trial that in June 2016, Rivera, who was drunk at the time, woke her up and told her to get on the top bunk. Y.A.C. testified that while she was on the top bunk, she heard her stepfather say, "or else he will get the big knife," and she heard M.A.C. say "you're scaring me, stop." *Id.* at 79. She felt the bed moving and heard Rivera say, "was it in" and heard M.A.C. crying. *Id.* at 79–80. Y.A.C. testified that she told Rivera to stop, but he told M.A.C. to tell her to shut up. Later, she heard Rivera tell M.A.C. to wipe well when M.A.C. went to the bathroom.

Pursuant to a search warrant for the residence, CCSO Detective John Elliott found a pair of gray underwear in a hamper in the children's bedroom. A forensic science technician who participated in the search collected the underwear and two knives from the kitchen sink area. At trial, M.A.C. identified the gray underwear, State's Exhibit 64, as the underwear she was wearing during the assault. Separately, CCSO Detective Matthew Kelly obtained a DNA sample from Rivera.

Maryland State Police Forensic Scientist Molly Rollo, who was qualified as an expert in forensic serology and forensic DNA analysis, testified at trial that four areas on the gray underwear tested positive for acid phosphatase, an enzyme component of semen. Rollo conduct a DNA analysis on those areas and determined that the DNA sperm fraction on the underwear contained one male contributor, which matched the DNA profile of Rivera in that the probability of a random unrelated individual having the same DNA profile was 1 in 32 sextillion in the Caucasian population, 1 in 21 sextillion in the African American population, and 1 in 1.5 sextillion in the Southwest Hispanic population.

Debbie Shuck-Reynolds, the Program Coordinator for the Sexual Assault Nurse Examiner ("SANE") program at the University of Maryland Charles Medical Center, testified that although

she did not conduct the examination of M.A.C., the photographs from the examination showed genital trauma. Shuck-Reynolds testified that the photographs showed that M.A.C.'s vagina had an abrasion at the 3 o'clock position, a complete interruption at the hymenal opening between the 3 and 5 o'clock positions, and a tear in the hymenal ring at 9 o'clock. Shuck-Reynolds testified because the nurse who had conducted the examination had a medical condition that prevented her from working and testifying.

After Rivera was found guilty, he was sentenced on April 6, 2017 to life imprisonment plus 25 years.

## II. Direct Appeal

Rivera filed a direct appeal to the Court of Special Appeals of Maryland, now known as the Appellate Court of Maryland ("the Maryland Appellate Court"), and asserted a single assignment of error: "The court erred in allowing a SANE nurse who did not conduct the SANE exam of the victim in this case to testify to her opinions and conclusions regarding the victim's injuries based on her review of the chart, report, and pictures generated by the nurse who conducted the exam but was unavailable to testify." State Record ("S.R.") 32, ECF No. 8-1. On February 27, 2018, the Maryland Appellate Court issued an opinion affirming Rivera's convictions and sentences. Rivera did not file a petition for a writ of certiorari with the Court of Appeals of Maryland, now the Supreme Court of Maryland ("the Maryland Supreme Court").

## III. State Post-Conviction Proceedings

On June 1, 2018, Rivera filed with the Circuit Court a self-represented Petition for Post Conviction Relief ("the State Petition") pursuant to the Maryland Uniform Postconviction Procedure Act, Md. Code Ann., Crim. Proc. §§ 7–101 to 7–109 (LexisNexis 2025). Counsel later

filed a supplement to the State Petition. The Circuit Court interpreted the State Petition as asserting the following claims (Claims 1–17):

1. Defense trial counsel rendered ineffective assistance by failing to move for a mistrial after knives remained on the bench in the jury's view during testimony;

2. Defense trial counsel rendered ineffective assistance by failing to move for a mistrial based on Juror 61's use of his phone during a lunch break;

3. Defense trial counsel rendered ineffective assistance by failing to subpoena the phone records of M.A.C.;

4. Defense trial counsel rendered ineffective assistance by failing to adequately cross-examine M.A.C. about her phone;

5. Defense trial counsel rendered ineffective assistance by failing to subpoena [a friend of M.A.C.];

6. Defense trial counsel rendered ineffective assistance by failing to object to an unlawful voir dire question;

7. Defense trial counsel rendered ineffective assistance by failing to adequately cross-examine Ms. Chavez about her relationship with the Defendant;

8. Defense trial counsel rendered ineffective assistance by eliciting harmful evidence about the Defendant and no mitigating evidence;

9. Defense trial counsel rendered ineffective assistance by failing to argue for the Defendant's release pending sentencing;

10. Defense trial counsel rendered ineffective assistance by failing to object to the abbreviated names in voir dire;

11. Defense trial counsel rendered ineffective assistance by failing to file a motion for modification of sentence;

12. Defense trial counsel rendered ineffective assistance by failing to apply for a three-judge panel review and failing to consult with the Defendant about filing;

13. Defense trial counsel rendered ineffective assistance because the cumulative errors violated the Defendant's right to a fair trial;

14. Defense appellate counsel rendered ineffective assistance by failing to appeal the denied motion for mistrial;

15. Defense appellate counsel rendered ineffective assistance by failing to appeal the motion to strike testimony about the knives;

16. Defense appellate counsel rendered ineffective assistance by failing to appeal the denial of the motion for judgment of acquittal; and

17. The trial court violated Petitioner's rights to due process and a fair trial.

S.R. 385–387.

The Circuit Court held a hearing on the State Petition on September 3 and 30, 2021 and issued a Statement of Reasons and Order of Court ("the State Petition Order") on January 11, 2022, in which it granted Rivera leave to file a belated Motion for Modification of the Sentence but otherwise denied the State Petition.

On January 26, 2022, Rivera filed an Application for Leave to Appeal the denial of the State Petition. The Application for Leave to Appeal raised two discrete issues:

1. The post-conviction court's finding that trial counsel's failure to object to an illegal question during voir dire was neither deficient performance nor prejudicial is erroneous.

2. Trial counsel's testimony about not applying for a three-judge panel sentencing review provides the allegedly missing 'definitive evidence' of ineffective assistance.

S.R. 409, 415. On May 25, 2022, the Maryland Appellate Court summarily denied Rivera's Application for Leave to Appeal.

## DISCUSSION

In the present Petition for a Writ of Habeas Corpus, Rivera lists four specific claims but also attaches the Circuit Court's State Petition Order and states that it includes 17 claims which he seeks to assert again. Because the Circuit Court's State Petition Order included and addressed the four specific claims listed in the Petition, the Court will construe the 17 claims referenced and addressed in the State Petition as the 17 claims Rivera has asserted in his federal habeas petition.

Respondents have filed a Limited Answer in which they assert that all but 3 of the 17 claims should be dismissed as procedurally defaulted because they were not included in Rivera's Application for Leave to Appeal the denial of the State Petition. As to the two claims that were asserted in that Application, Respondents argue that the claim that Rivera's trial counsel provided ineffective assistance of counsel by failing to object to a compound voir dire question (Claim 6) and the claim that his counsel provided ineffective assistance of counsel by failing to file a motion for a review of his sentence by a three-judge panel (Claim 12) both lack merit. Respondents also argue that Rivera's claim that his counsel was ineffective by failing to file a motion for modification of the sentence (Claim 11) is moot because he received relief on that issue from the Circuit Court.

## I. Legal Standards

### A. Petitions for a Writ of Habeas Corpus

A petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

**B. Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and prejudice. *Id.* at 692. First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, the petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" whose result was reliable. *Id.* at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In the context of a claim of ineffective assistance of appellate counsel, to establish the deficient performance prong, a movant must first show that "counsel's representation fell below an objective standard of reasonableness." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). Appellate counsel is "not obligated to assert all nonfrivolous issues on appeal," *id.*, and courts presume that the appellate counsel "decided which issues were most likely to afford relief on appeal," *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). The

"prejudice" element is satisfied by a showing of a reasonable probability that defendant would have prevailed on appeal but for appellate counsel's deficient performance. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).

**II. Procedural Default**

Respondents assert that all of the claims in the federal habeas petition that were not asserted in Rivera's Application for the Leave to Appeal should be dismissed as subject to the procedural default doctrine.

A petitioner seeking habeas relief in federal court generally must first exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Maryland Appellate Court and then to the Maryland Supreme Court by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301 (LexisNexis 2020). To exhaust a claim through state post-conviction proceedings, a defendant must assert the claim in a petition filed in the Maryland Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7–101 to 7–103. After a decision on a state post-conviction petition, further review is available through an application for leave to appeal filed with the Maryland Appellate Court. *Id.* § 7–109. If the application is denied, there is no further review available, and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12–202.

When a petitioner has failed to exhaust state remedies, whether by failing to raise the claim on direct appeal or in post-conviction proceedings, or by failing to file a timely notice of appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note a timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise a claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (per curiam) (failure to raise a claim during post-conviction proceedings). As relevant here, a procedural default occurs when a habeas petitioner failed to exhaust such available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman*, 501 U.S. at 735 n.1).

Here, in his Application for Leave to Appeal the denial of the State Petition, Rivera sought appellate review on only 2 of the 17 claims originally asserted in the State Petition: Claim 6, that "[t]he post-conviction court's finding that trial counsel's failure to object to an illegal question during voir dire was neither deficient performance no[r] prejudicial is erroneous," S.R. 409, and Claim 12, that "[t]rial counsel's testimony about not applying for a three-judge panel sentencing review provides the allegedly missing 'definitive evidence' of ineffective assistance," S.R. 415. Where the Maryland Appellate Court will consider only claims included in a timely application for leave to appeal, *see* Md. Code Ann., Crim Proc. § 7–109(a), the other 15 claims asserted in the State Petition and now reasserted in the federal Petition, consisting of Claims 1–5, 7–11, and 13–17, are procedurally defaulted. *See Pevia v. Bishop*, No. ELH-16-1223, 2019 WL 3412649, at *13 (D. Md. July 26, 2019) ("The unexhausted claims are procedurally defaulted, as [Petitioner] failed to present them in his application for leave to appeal and the state courts would now find that he cannot assert those claims.").

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions" resulting in a denial of "fundamental fairness." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494. Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Here, Rivera was provided an opportunity to show that an exception applies that would allow the Court to proceed to the merits of the procedurally defaulted claims, but he has not done so. Specifically, Rivera was notified that he had the right to file a Reply to Respondents' Limited Answer to address the issue of procedural default, including that he could provide the Court with a basis to find cause and prejudice or actual innocence as a basis to excuse the procedural default. Although Rivera requested and was granted an extension of time to file such a Reply, he never

filed one. Based on the present record, the Court can identify no basis upon which it could find cause for the failure to pursue the identified claims through all steps of state court review, or that there is any basis to conclude that a failure to address these claims resulted in prejudice or a fundamental miscarriage of justice under the prevailing standards. Accordingly, all of Rivera's claims, with the exception of Claims 6 and 12, will be dismissed as procedurally defaulted.

## III. Voir Dire Question

In Claim 6, which was advanced in the Application for Leave to Appeal, Rivera asserts ineffective assistance of counsel based on his trial counsel's failure to object to a voir dire question that was arguably an unlawful compound question under Maryland law.

Prior to trial, the parties submitted proposed voir dire questions in writing. The defense submitted a proposed question ("the 'strong feelings' question") that was asked of the venire as follows:

> Is there any member of the jury panel who has strong feelings about allegations of sexual abuse against a minor child that would make it difficult or would affect their ability to be fair and impartial in this matter?

1/23/17 Trial Tr. at 119, ECF No. 8-2. Three jurors answered the "strong feelings" question in the affirmative. After questioning these jurors on this issue individually, the trial court struck all three jurors for cause.

In his State Petition, Rivera argued that his trial counsel was ineffective for failing to object to the "strong feelings" question because it violated Maryland law on compound voir dire questions. The Circuit Court denied Rivera's claim on the grounds that "[t]here is no indication in the record that the question at issue was confusing or that any jurors did not understand," so "trial counsel was not deficient, and Petitioner was not prejudiced." S.R. 395.

Maryland law on compound voir dire questions evolved over a 14-year period. In *Dingle v. State*, 759 A.2d 819 (Md. 2000), the Maryland Supreme Court held that the trial court erred when it asked several two-part questions relating to whether jurors had certain experiences or associations, and whether those experiences and associations would affect their ability to be fair and impartial. *Id.* at 822–823, 828, 830. The *Dingle* court found the questions improper because they establish "a voir dire process that allows, if not requires, the individual venire person to decide his or her ability to be fair and impartial" and thus "shifts from the trial judge to the venire responsibility to decide juror bias." *Id.* at 830. In an arguably contradictory decision, in *State v. Thomas*, 798 A.2d 566 (Md. 2002), the Maryland Supreme Court held that the trial court erred in declining to give a voir dire question asking "Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged?" *Id.* at 567–68, 574. In 2014, however, the Maryland Supreme Court held that the following question was improper under *Dingle*: "Does any member of the panel hold such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts of this trial where narcotics violations have been alleged?" *See Pearson v. State*, 86 A.3d 1232, 1234, 1240 (Md. 2014).

Although the "strong feelings" question appears to violate Maryland law as articulated in *Pearson*, Rivera's claim that trial counsel's failure to object to it constituted ineffective assistance of counsel nevertheless fails because he has provided no persuasive basis to conclude that the failure to object resulted in prejudice under *Strickland*. Three jurors acknowledged strong feelings that could affect their ability to be fair and impartial and were then struck for cause. There is no basis in the record to conclude that any of the jurors selected to hear the case had such strong feelings but failed to undergo individualized voir dire because they concluded on their own that their feelings

would not prevent them from hearing the case in an impartial manner. Further, the evidence against Rivera was overwhelming in that it included detailed testimony from the victim recounting the rape, corroborating testimony from the victim's sister who was in the room at the time of the rape, photographs and testimony from a SANE nurse establishing that abrasions and other injuries sustained by the victim were consistent with a sexual assault, and evidence that DNA from sperm extracted from the victim's underwear matched Rivera. Under these circumstances, the Court finds that Rivera has not demonstrated prejudice arising from any deficient performance relating to the voir dire question, and that at a minimum, the Circuit Court's determination that there was no such prejudice was not an unreasonable application of clearly established federal law. The claim relating to the voir dire question will therefore be denied.

**IV. Sentence Review**

Next, in Claim 12, Rivera asserts a claim of ineffective assistance of counsel based on his counsel's failure to file an application for a sentence review by a three-judge panel. Maryland law provides that a defendant convicted of a crime and sentenced to more than two years of imprisonment is entitled to a sentence review by a three-judge panel. Md. Code Ann., Crim. Proc. §§ 8–101, 8–102. In the State Petition, Rivera asserted this claim and attached affidavits from his trial counsel, Alison Heldreth and Edie Fortuna, who each stated that she did not recall consulting with Rivera on his right to seek a three-judge panel review, and that she did not file an application for such a review. During the state post-conviction hearing, Heldreth testified that she did not file the application for a three-judge panel because she left the public defender's office and acknowledged that she had no strategic reason for not filing such an application. Fortuna testified that she had "no good reason" for failing to file the application. 9/3/21 Post-Conviction Hrg. Tr. at 44, ECF No. 8-6.

In considering this issue in relation to the State Petition, through which Rivera also asserted that he had requested that his trial counsel file such an application, the Circuit Court denied the claim because "[t]rial counsel's affidavits do not offer definite evidence that they did not consult with the Petitioner or that Petitioner requested that they file an application for a three-judge panel," so "trial counsel was not deficient, and Petitioner was not prejudiced." S.R. 399. In his Application for Leave to Appeal to the Maryland Appellate Court, Rivera argued that trial counsel's testimony at the post-conviction hearing contradicted the Circuit Court's conclusion.

The three-judge panel review, which allows for a sentence reduction as a matter of discretion, is one of the proceedings established within the statutory title on post-conviction review within the Criminal Procedure Article of the Maryland Code. *See* Md. Code Ann., Crim. Proc. § 8–102. It is therefore a form of judicial review "that occurs in a proceeding outside of the direct review process" and thus meets the United States Supreme Court's definition of collateral review. *See Wall v. Kholi*, 562 U.S. 545, 547, 560 (2011) (finding that a motion for discretionary sentence reduction is collateral review). Rivera's claim that his trial counsel failed to file an application for review of his sentence by a three-judge panel therefore amounts to a claim of ineffective assistance of post-conviction counsel, which is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Benson v. Warden*, No. 22-CV-2953-LKG, 2025 WL 2163223, at *11 (D. Md. July 30, 2025) (holding that a federal habeas claim based on counsel's failure to file an application for a sentence review by a three-judge panel under Maryland law was not cognizable under 28 U.S.C. § 2254(i)); *Williams v. Wolfe*, No. ELH-22-75, 2024 WL 4838848, at *15 (D. Md. Nov. 20, 2024) (same).

Even if the Court could consider this claim on federal habeas review as a claim of ineffective assistance of counsel, it would fail. Regardless of whether the failure to file an application for a three-judge panel review was deficient performance, the ruling in relation to the State Petition that Rivera had not demonstrated prejudice on this issue was not an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d). At sentencing, the trial judge departed upward from the sentencing guidelines range and sentenced Rivera to life imprisonment plus 25 years. The trial judge provided the following justification for the sentence:

> I do believe that a departure from the sentencing guidelines is appropriate in this matter. And using the guidelines version 8.2, November 1, 2016, some of the common reasons for departure include the offender's major role in the offense . . . The level of harm was excessive . . . [I]n this case, we were dealing with an 11-year-old. We're dealing with both mental and physical permanent damage to the 11-year-old. We're dealing with an 8-year-old who, in theory, was in the comfort of her home, in the comfort of her own bed next to her sister, and she was called upon to leave that space of comfort, go to the top bunk and then spend the next amount of time listening to her sister undergo the most heinous type of abuse that could be possible. And our hearts pray for Y[A.C.]. She probably was sad about what her sister had to go through. But also worried about whether or not she would be next. So, so I feel that the circumstance as to the harm as to M[A.C.], but also to Y[A.C.] calls for departure from the guidelines.
>
> Special circumstances of the victim. Again, the victim in this matter was a household member. The defendant was place[d] in a position of trust. He should have been helping her with her, her activities of life with what she was going through in her own development. But instead, was a predator on her. She was particularly vulnerable. She was not placed in a position where she could, even on her own, articulate what was going on to her in the normal way we would think that that would occur in the community. It had to be through other children who learned of her issues. And then the matter broke open. But again, it's a, when I think about her vulnerability and her inability to even come forward with it, again, I think that that's a departure factor.
>
> The vicious or heinous nature of the conduct . . . I think his conduct was, was particularly egregious. I did review the statements of the victims in this matter. And, and so I'm satisfied that my decision in this matter calls in the, both the recommendation of the State's attorney and what I think is appropriate given this terrible situation. And it is a terrible situation.

Sentencing Hrg. Tr. at 51–53, ECF No. 8-5.

Considering the factors enumerated by the trial judge, including the nature and extent of the harm inflicted on the victim, the 11-year-old stepdaughter of the defendant, and her 8-year sister who was a witness, and where Rivera has offered no specific argument on why a three-judge panel would have reduced his sentence, the Court finds that the Circuit Court's conclusion that Rivera has not shown prejudice under *Strickland* was not an unreasonable application of federal law.

This claim will therefore be dismissed as non-cognizable in federal habeas review and also denied on the merits.

## V. Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a petition is denied on procedural grounds, the petitioner must show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.

Upon review, the Court finds that Rivera has failed to satisfy the requisite showing on any of his claims. The Court therefore declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DISMISSED and DENIED. The Court will decline to issue a certificate of appealability. A separate Order shall be issued.

Date: September 9, 2026

THEODORE D. CHUANG
United States District Judge